UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAIWAN D. JEFFERSON, | ) Case No. ED 14-516 DDP (RAO) |
| | ) |
| Petitioner, | ) **ORDER RE: PETITION FOR WRIT** |
| | ) **OF HABEAS CORPUS AND** |
| v. | ) **REQUEST FOR EVIDENTIARY** |
| | ) **HEARING** |
| JEFFREY A. BEARD, | ) |
| | ) |
| Respondent. | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| _____ | ) |

Presently before the court is Petitioner Taiwan D. Jefferson's Petition for a Writ of Habeas Corpus and Request for Evidentiary Hearing. Having considered the parties' submissions, the court adopts the following Order.

# I. BACKGROUND

## A. Procedural History

On March 2, 2010, a San Bernardino County Superior Court jury convicted Taiwan D. Jefferson ("Petitioner") of two counts of robbery with true findings on firearm use allegations. (Lodg. No. 15, Clerk's Transcript ("CT"), at 195.) The trial court sentenced Petitioner to 19 years and 4 months in prison. (*Id.* at 203-05.)

Petitioner appealed to the California Court of Appeal, which affirmed the judgment in a reasoned decision. (Lodg. Nos. 2, 4.) Thereafter, the California Supreme Court denied his Petition for Review summarily. (Lodg. Nos. 5, 6.) Petitioner then filed state habeas petitions in the San Bernardino County Superior Court, the California Court of Appeal, and the California Supreme Court, all of which were denied. (Lodg. Nos. 7-14.)

On March 6, 2014, Petitioner, proceeding pro se, constructively filed a Petition for Writ of Habeas Corpus by a Person in State Custody ("Petition"), pursuant to 28 U.S.C. § 2254. (Dkt. No. 1.) On April 23, 2014, Respondent filed a Motion to Dismiss the Petition and lodged the relevant state records. (Dkt. Nos. 7, 8.) The District Court denied the Motion to Dismiss on December 1, 2015. (Dkt. No. 26.) On February 1, 2016, Respondent filed an Answer to the Petition and lodged the relevant state records ("Answer"). (Dkt. Nos. 29, 30.) On July 18, 2016, Petitioner filed a Traverse ("Traverse"). (Dkt. No. 41.) On September 6, 2016, Petitioner filed a Declaration in support of his Traverse. (Dkt. No. 43.)

## B. Factual Summary

For background purposes only, the court includes the factual summary set forth in the California Court of Appeal's unpublished decision affirming Petitioner's conviction.

> During the morning of June 24, 2009, Christina Linder and Diana Hyde, two workers at a Check Into Cash store, prepared to open the store for the day. Shortly after the store opened, a man, later identified as [Petitioner], walked in and asked for an employment application. Linder and [Petitioner] briefly discussed the application process, and Hyde told [Petitioner] he would need three local references. "Three local references?,"

[Petitioner] asked, and, fiddling with something in his waistband, said, "I think I have that right here." At that point, [Petitioner] pulled a revolver out from under his shirt and pointed it at the workers' heads.

[Petitioner] ordered the women to back up. He walked around the counter and placed the gun at Linder's temple, saying, "Give me the money." Linder complied with [Petitioner]'s demand, after which [Petitioner] ordered the women to lay on the ground and count out loud. [Petitioner] ran to the back of the store, searched some drawers, and returned moments later, asking if there was a safe. After he was told there was no safe, [Petitioner] grabbed Linder's keys from her desk, told the women to count to 10 out loud or he would blow their heads off, and left.

After hearing the store's front door close, Hyde got up and went to lock the front door, while Linder activated the silent alarm. Just as Hyde was about to lock the door, she saw [Petitioner] inside a red car. Hyde opened the door and yelled at Linder to write down the license plate number, "5TJL," that she observed on the back of the red car as it drove away. Hyde then locked the front door and called 911.

Minutes later, Deputy Sheriff Eric Getts arrived at the store and spoke with Hyde. Hyde told Deputy Getts about the robbery and described the suspect's vehicle as a maroon or burgundy-colored Ford Taurus; she gave him the partial license plate number "5TJL." Deputy Getts advised dispatch of this information, then took statements from Hyde and Linder.

The next morning, Detective Brandon Rio spotted a Ford Taurus resembling Hyde's description and followed it to an apartment complex. Detective Glen Mellor was dispatched to the apartment complex and assigned to wait outside the complex to make sure the car did not leave. Twenty minutes later, the suspect car drove away, and Detective Mellor followed. After Detective Mellor followed the car for about a mile, the car pulled over. Detective Mellor turned on his emergency lights and notified other units that the car was stopping. After other deputies arrived at the scene, Detective Mellor arrested [Petitioner] and drove him to the police station. (Lodg. No. 4 at 2-4.)

## II. LEGAL STANDARD

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." *Harrington v. Richter*, 562 U.S. 86, 98 (2011). In particular, this Court may grant habeas relief only if the state court adjudication was

contrary to or an unreasonable application of clearly established federal law as determined by the United States Supreme Court or was based upon an unreasonable determination of the facts. *Id.* at 100 (citing 28 U.S.C. § 2254(d)). In a habeas action, this Court reviews the state courts' last reasoned decision. *Maxwell v. Roe*, 628 F.3d 486, 495 (9th Cir. 2010).

A state court's decision is "contrary to" clearly established federal law if: (1) the state court applies a rule that contradicts governing Supreme Court law; or (2) the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court but nevertheless arrives at a result that is different from the Supreme Court precedent. *See Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (citing *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)). A state court need not cite or even be aware of the controlling Supreme Court cases "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002).

A state court's decision is based upon an "unreasonable application" of clearly established federal law if it applies the correct governing Supreme Court law but unreasonably applies it to the facts of the prisoner's case. *Williams*, 529 U.S. at 412-13. A federal court may not grant habeas relief "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be *unreasonable*." *Id.* at 411 (emphasis added).

In determining whether a state court decision was based on an "unreasonable determination of the facts" under 28 U.S.C. § 2254(d)(2), such a decision is not unreasonable "merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). The "unreasonable determination of the facts" standard may be met where: (1) the state court's findings of fact "were not supported by substantial evidence in the state court record"; or (2) the fact-finding process was deficient in some material way. *Hibbler v.*

*Benedetti*, 693 F.3d 1140, 1146 (9th Cir. 2012) (citing *Taylor v. Maddox*, 366 F.3d 992, 999-1001 (9th Cir. 2004)).

In applying these standards, a federal habeas court looks to the "last reasoned decision" from a lower state court to determine the rationale for the state courts' denial of the claim. *See Cannedy v. Adams*, 706 F.3d 1148, 1156 (9th Cir. 2013) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)). There is a presumption that a claim that has been silently denied by a state court was "adjudicated on the merits" within the meaning of 28 U.S.C. § 2254(d), and that AEDPA's deferential standard of review therefore applies, in the absence of any indication or state-law procedural principle to the contrary. *See Johnson v. Williams*, 133 S. Ct. 1088, 1094 (2013) (citing *Richter*, 562 U.S. at 99). When a state court "does not supply reasoning for its decision [on a petitioner's claims]," the Court must "engage in an independent review of the record and ascertain whether the state court's decision was objectively unreasonable." *Walker v. Martel*, 709 F.3d 925, 939 (9th Cir. 2013), *cert. denied*, 134 S. Ct. 514 (2013) (quotations and citation omitted).

Where there has been no state court ruling on the merits of a claim, the federal habeas court reviews the claim *de novo*. *See Chaker v. Crogan*, 428 F.3d 1215, 1221 (9th Cir. 2005); *see also Ylst*, 501 U.S. at 803 (where the last reasoned opinion imposes a procedural bar, courts will presume that "a later decision rejecting the claim did not silently disregard that bar and consider the merits").

## III. DISCUSSION

Petitioner raises four grounds for relief. First, Petitioner claims that the admission of his involuntary confession violated his right to due process of law. Second, Petitioner claims that his Fifth Amendment rights were violated by the admission and use of unreliable identification evidence. Third, Petitioner claims that there was insufficient evidence to support his conviction in violation of his Fourteenth Amendment rights. Fourth, Petitioner claims his trial counsel's failure to conduct any pre-trial investigation

violated his Sixth Amendment right to effective assistance of counsel.  (Pet. at 6(1)-6(16).)  The court addresses each claim in turn.

### A. Petitioner's Claim That The Admission Of His Involuntary Confession Violated His Right To Due Process Of Law Does Not Warrant Habeas Relief.

In Ground One, Petitioner claims that his due process rights were violated by the admission of his confession.  (Pet. at 6(1).)  He argues that he confessed in response to an implied promise that his wife would not be charged with a crime if he confessed to the robbery.  (*Id.* at 6(6).)

The last reasoned decision on this claim is the Court of Appeal's opinion on direct appeal.[1]  Thus, for Ground One, the court will apply the AEDPA standard to the Court of Appeal's decision.  *See Maravilla v. Rimmer*, No. CV 04-0684-DDP (MAN), 2009 WL 1689599, at *6 (C.D. Cal. June 12, 2009) (applying § 2254(d)(1) to California Court of Appeal's reasoned decision on direct appeal for claims later raised in a state habeas petition and denied with citation to *In re Waltreus*).

### 1.    Background

The court adopts the factual summary regarding the motion to suppress set forth in the California Court of Appeal's unpublished decision affirming Petitioner's

_____

[1] Here, Petitioner raised Ground One in both the California Court of Appeal and the California Supreme Court on direct appeal.  (*See* Lodg. Nos. 2, 5.)  The California Court of Appeal rejected the claim on the merits in a reasoned opinion, and the California Supreme Court denied the petition for review without comment or citation.  (*See* Lodg. Nos. 4, 6.)  Petitioner also raised Ground One in his state habeas petitions.  (Lodg. Nos. 7, 9, 11, 13.)  The San Bernardino County Superior Court, in a reasoned opinion, denied this claim for having already been raised and rejected on appeal, citing *In re Harris*, 5 Cal. 4th 813, 829 (1993) and *In re Waltreus*, 62 Cal. 2d 218, 225 (1965).  (Lodg. No. 8 at 2.)  The California Court of Appeal and California Supreme Court denied Petitioner's state habeas petitions without comment or citation.  "A *Waltreus* denial is neither a ruling of procedural default nor a ruling on the merits."  *Carter v. Giurbino*, 385 F.3d 1194, 1198 (9th Cir. 2004).  Federal courts "look through" a denial based on *Waltreus* to previous state court decisions.  *Forrest v. Vasquez*, 75 F.3d 562, 564 (9th Cir. 1996).

conviction:

> Prior to trial, [Petitioner] moved to suppress his confession on the ground that it was involuntary. [Petitioner] essentially argued that the totality of circumstances surrounding his interrogation led him to believe that a confession would result in the exoneration of his wife, who was at the time suspected of being an accessory to the robbery.

> Detective Mellor was the sole substantive witness at the hearing. He provided the following testimony. After arresting [Petitioner], Detective Mellor quickly searched the glove box and front seat area of [Petitioner]'s car, and found no gun. Detective Mellor then drove [Petitioner] to the police station and placed him in an interview room. Inside the interview room, Detective Mellor advised [Petitioner] of his Miranda rights, and [Petitioner] said he understood and was willing to talk.

> . . .

> Detective Mellor initially interviewed [Petitioner] for about 45 minutes to an hour in the interview room. At the outset, [Petitioner] repeatedly denied any knowledge of the robbery. During this initial interview, Detective Mellor was in and out of the interview room several times because the detectives who were at [Petitioner]'s apartment were updating him as to their findings. After being informed that the gun had been found in the glove box of [Petitioner]'s car, Detective Mellor suspected that [Petitioner]'s wife had moved the gun from the apartment to the glove box to prevent the police from finding it. Suspecting she was an accessory to the robbery, Detective Mellor requested that [Petitioner]'s wife come to the station to be interviewed.

> Complying with Detective Mellor's request, [Petitioner]'s wife went to the police station with her children. Because she had children with her, she was initially brought into the briefing room. Detective Mellor moved [Petitioner] from the interview room to another room and [Petitioner]'s wife to the interview room, where he interviewed her for about 15 to 20 minutes.

> After interviewing [Petitioner]'s wife, Detective Mellor went back and forth between the two rooms two or three times, attempting to harmonize the two stories. At some point, [Petitioner]'s wife asked Detective Mellor if she could talk to [Petitioner]. Detective Mellor asked why, and she replied that she wanted to tell [Petitioner] to tell the truth. Detective Mellor then allowed her to speak with [Petitioner] for "a few moments." Following this, Detective Mellor spoke to [Petitioner] out of the presence of [Petitioner]'s wife, telling [Petitioner] that the evidence indicated he was lying about the robbery and the location of the gun. At this point, [Petitioner] told Detective Mellor that he would tell the truth. [Petitioner] then confessed to the robbery.

Detective Mellor testified that he did not make any threats to [Petitioner]. He made no promises of leniency relative to [Petitioner]'s wife, nor any promises contingent upon a confession. He did discuss the fact that [Petitioner]'s wife could be charged with a crime, but did not threaten to charge her with a crime if Petitioner failed to confess.

[Petitioner]'s wife was at the station of her own volition. Detective Mellor told both [Petitioner] and his wife, separately, that [Petitioner]'s wife could be charged with a crime. However, Detective Mellor never told [Petitioner] that if he confessed his wife would not be charged with a crime. After [Petitioner] confessed, [Petitioner]'s wife left the station and was not charged with any crimes.

In denying the motion, the trial court explained that, "[b]ased on the statements made by [Detective Mellor] ... even though there are some inconsistencies, I don't think that they amount to finding out that he is somehow hiding something or nefariously softening up [Petitioner] in order to get him to confess."

(Lodg. No. 4 at 4-7.)

## 2. The California Court of Appeal Opinion

In denying Petitioner's claim on appeal, the California Court of Appeal noted that Petitioner conceded there was no express promise of leniency. (Lodg. No. 4 at 9.) Instead, Petitioner submitted that given the sequence of events surrounding his interrogation, anyone in his position would have reasonably concluded that a confession would result in his wife's release instead of being placed in jail. (*Id*. at 9-10.) The Court of Appeal rejected this argument because the record before it was "devoid of any facts suggesting that [Petitioner] was given to understand that he might reasonably expect that Detective Mellor's decision whether to charge [Petitioner's] wife was dependent on [Petitioner] confessing to the robbery." (*Id*. at 10.)

In considering the "totality of the circumstances" of the confession, the appellate court first explained that there was little information as to the characteristics of the Petitioner, but "[f]rom the facts that he was married and that he and/or his wife had children," the court could infer that he was not of "a youthful age." (*Id*.) The court also inferred that Petitioner was not easily intimidated by police because the "encounter" between him and Detective Mellor lasted for over four hours. (*Id*.)

As for the characteristics of the interrogation, Detective Mellor testified that he felt Petitioner was being evasive, and Detective Mellor asked Petitioner's wife to come to the police station because he believed she may have been an accessory after the fact due to a gun appearing in a location that had been previously searched twice. (*Id*.) Detective Mellor testified that he did not make any promise of leniency to Petitioner as to charging his wife with a crime. (*Id*. at 11.) The court found:

> To a preponderance of the evidence, there is nothing in these circumstances which indicate that [Petitioner] was "given to understand that he might reasonably expect" that Detective Mellor's decision whether to charge [Petitioner's] wife was dependent on him confessing to the robbery. (*Id*.)

As to voluntariness, the court noted that there was nothing in the record on the substance of any conversation between Detective Mellor and Petitioner's wife and the conversation between Petitioner's wife and Petitioner. (*Id*.) "Neither [Petitioner] nor his wife testified as to any direct or indirect grant of leniency towards [Petitioner's] wife." The state appellate court concluded:

> While [Petitioner] may have believed that his cooperation would benefit his wife, there is nothing in the circumstances of our record to support a conclusion that his belief arose from any implied promise of leniency by Detective Mellor. (*Id*.)

### 3. Federal Law and Analysis

Under the Fourteenth Amendment, a statement is involuntary only if the police use coercive means to undermine the suspect's ability to exercise free will. *See Colorado v. Connelly*, 479 U.S. 157, 167 (1986). In addressing a claim that the introduction of an involuntary confession has violated due process, courts examine the totality of the circumstances to determine whether a confession has been "made freely, voluntarily and without compulsion or inducement of any sort." *Withrow v. Williams*, 507 U.S. 680, 689 (1993) (citing *Haynes v. Washington*, 373 U.S. 503, 513 (1963)); *see also Dickerson v. United States*, 530 U.S. 428, 434 (2000) (finding that the due process voluntariness test examines

9

whether a defendant's will was overborne by the surrounding circumstances).

Although several factors are considered in determining whether a confession is involuntary, police coercion is a "crucial element." *Withrow*, 507 U.S. at 693. The inquiry "is not limited to instances in which the claim is that the police conduct was inherently coercive," but also to "when the interrogation techniques were improper only because, in the particular circumstances of the case, the confession is unlikely to have been the product of a free and rational will." *Miller v. Fenton*, 474 U.S. 104, 111 (1985) (internal quotations and citations omitted). In addition to the level of police coercion, other relevant factors include the length of the interrogation, its continuity, and the defendant's maturity, education, physical condition, and mental health. *Withrow*, 507 U.S. at 693-94. "It is not sufficient for a court to consider the circumstances in isolation. Instead, 'all the circumstances attendant upon the confession must be taken into account.'" *Doody v. Ryan*, 649 F.3d 986, 1008 (9th Cir. 2011) (quoting *Reck v. Pate*, 367 U.S. 433, 440 (1961)). "[I]f interrogators obtained a confession after Miranda warnings and a valid waiver, the confession was likely voluntary." *DeWeaver v. Runnels*, 556 F.3d 995, 1003 (9th Cir. 2009) (citing *Missouri v. Seibert*, 542 U.S. 600, 608-09 (2004)).

Law enforcement officials cannot extract a confession "by any sort of threats or violence, [or] … by any direct or implied promises, however slight, [or] by the exertion of any improper influence." *Hutto v. Ross*, 429 U.S. 28, 30 (1976). Threats or promises involving an accused's family members may warrant careful scrutiny. *See Lynumn v. Illinois*, 372 U.S. 528, 534 (1963) (finding that it was "abundantly clear that the petitioner's oral confession was made only after the police had told her that state financial aid for her infant children would be cut off, and her children taken from her, if she did not 'cooperate.'"); *Haynes v. Washington*, 373 U.S. 503, 514 (1963) (confession involuntary where suspect was held incommunicado and was promised communication with, and access to, family if he confessed).

"[M]isrepresentations made by law enforcement in obtaining a statement, while reprehensible, do[] not necessarily constitute coercive conduct." *Pollard v. Galaza*, 290

F.3d 1030, 1034 (9th Cir. 2002); *see also Frazier v. Cupp*, 394 U.S. 731, 737-39 (1969) (confession found to be voluntary despite an officer's false statement that a coconspirator had confessed). Similarly, encouraging a suspect to tell the truth is not coercion. *Amaya-Ruiz v. Stewart*, 121 F.3d 486, 495 (9th Cir. 1997), *overruled on other grounds by United States v. Preston*, 751 F.3d 1008 (9th Cir. 2014) (en banc).

AEDPA deference applies to the Court of Appeal's decision on this claim. The question is whether the California Court of Appeal's decision was contrary to, or involved an unreasonable application of, clearly established Supreme Court law, or whether the court's decision was based on an unreasonable determination of the facts in light of the evidence presented when the court determined that Petitioner's confession was voluntary. *See* 28 U.S.C. § 2254(d).

Here, the state court reasonably concluded that Petitioner's confession was voluntary considering the totality of all the surrounding circumstances. The record indicates that Detective Mellor read Petitioner his Miranda rights and obtained a waiver of those rights prior to the interrogation. (Lodg. No. 16, Reporter's Transcript ("RT") at 29-30.) Petitioner does not dispute the nature of this waiver. Although there was little on the record concerning Petitioner's maturity, physical health, or mental health, the fact that he had a wife and they took care of children together suggests Petitioner was not very young. The length of the interrogation—four and a half hours, with breaks—is not necessarily indicative of coercion. *See, e.g., Cunningham v. City of Wenatchee*, 345 F.3d 802, 810-11 (9th Cir. 2003) (officer did not undermine defendant's free will where interrogation lasted for eight hours and officer did not refuse to give break for food and water). There was also no evidence of physical coercion.

The appellate court also carefully considered Petitioner's assertions regarding Detective Mellor's references to Petitioner's wife and her being brought to the station. Detective Mellor testified that he requested that Petitioner's wife come to the police station because a revolver had been found in a location that had previously been searched, leading him to suspect Petitioner's wife as an accessory after the fact. (RT at 33,

53-54.) Detective Mellor further testified that he allowed Petitioner's wife to speak to Petitioner because she said that she wanted to tell Petitioner to tell the truth. (*Id*. at 64-65.) Detective Mellor stated that he never made a promise of leniency regarding Petitioner's wife if Petitioner confessed and he did not make any threats. (*Id*. at 75, 77.) Detective Mellor did admit that he discussed with Petitioner, and separately with Petitioner's wife, that she could be charged with a crime and go to jail. (*Id*. at 77-78.) But Detective Mellor also explained why he believed there was a basis for that charge. (Id.) Although threats or promises regarding a family member may render a confession involuntary, it was not unreasonable for the appellate court, given the record, to find that there was no promise made to Petitioner regarding Petitioner's wife and to conclude that Petitioner's statements were voluntary.[2]

In sum, the state court reasonably concluded after consideration of the totality of the circumstances that Petitioner's confession was not the product of impermissible police coercion. Accordingly, the state court's rejection of this ground for relief was neither an unreasonable application of, nor contrary to, clearly established federal law as determined by the Supreme Court.

### B. Petitioner's Claims Regarding Unreliable Identification Evidence and Insufficient Evidence Do Not Warrant Habeas Relief.

The court considers Grounds Two and Three together, as they were both deemed procedurally barred by the San Bernardino County Superior Court. (Lodg. No. 8 at 2.) The California Court of Appeal and California Supreme Court denied the state habeas petitions without comment or citation. (Lodg. Nos. 10, 12, 14.) The court therefore "looks through" the California Court of Appeal and Supreme Court's orders to the

---

[2] There was also no evidence refuting Detective Mellor's testimony or supporting Petitioner's assertions of coercion, as neither Petitioner nor his wife provided testimony and the recordings of the interviews were not preserved.

Superior Court order, which is the last reasoned state court decision. *See Ylst*, 501 U.S. at 803.

In Ground Two, Petitioner claims that a witness's positive identification of him as the perpetrator of the charged offense was unreliable. (Pet. at 6(8).) He argues that admission of this evidence violated his Fifth Amendment Due Process rights. (*Id.*) The Superior Court found that Petitioner's unreliable identification claim was procedurally barred by *In re Dixon*, 41 Cal. 2d 756, 759 (1953), because it rests entirely on the appellate record and could have been raised on direct appeal. (Lodg. No. 8 at 2.)

"A federal habeas court will not review a claim rejected by a state court if the decision . . . rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Walker v. Martin*, 562 U.S. 307, 315 (2011) (internal citation and quotations omitted). Absent showings of "cause" and "prejudice," federal habeas relief is unavailable when (1) "a state court has declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement[;]" and (2) "the state judgment rests on independent and adequate state procedural grounds." *Id.* at 316. The United States Supreme Court has recognized California's *Dixon* bar as an independent and adequate state procedural bar. *See Johnson v. Le*e, 136 S. Ct. 1802, 1803 (2016). Thus, the court concludes that this claim is procedurally defaulted.

In Ground Three, Petitioner contends that there was insufficient evidence to support his convictions because Detective Mellor and Deputy Guerra neglected to preserve the recordings of the interrogation, leading to Petitioner's conviction based on the uncorroborated testimony of Detective Mellor. (Pet. at 6(11)-6(13).) The Superior Court denied Petitioner's insufficient evidence claim on procedural grounds. It found that this claim was also barred by *In re Dixon*, 41 Cal. 2d 756, 759 (1953), because it rests entirely on the appellate record and could have been raised on direct appeal. (Lodg. No. 8 at 2.) In addition, the court found that a claim that the evidence was insufficient to prove his guilt beyond a reasonable doubt is not cognizable in a habeas corpus petition, citing *In re Lindley*, 29 Cal. 2d 709, 723 (1947). (Lodg. No. 8 at 2.) As described above, *In re*

*Dixon* is an independent and adequate state procedural bar.  The Ninth Circuit has also recognized *In re Lindley* as an independent and adequate state procedural bar.  *See Carter v. Giurbino*, 385 F.3d 1194, 1198 (9th Cir. 2004).  Thus, this claim is also procedurally defaulted.

### C.  Petitioner's Claim of Ineffective Assistance of Trial Counsel May Warrant Habeas Relief.

In Ground Four, Petitioner argues that his trial attorney was ineffective for failing to conduct any pre-trial investigation.  (Pet. at 6(15).)  Petitioner avers that he informed counsel that he spent the day with his in-laws at the time of the robbery, yet counsel failed to contact any of the alibi witnesses and present an alibi defense.  (*Id.* at 6(16).)

### 1.     The Superior Court Opinion

The Superior Court denied Petitioner's fourth claim as follows:

> Petitioner's fourth claim fails on its merits.  Petitioner bears a "heavy burden" to "*plead* sufficient grounds for relief[.]" (*People v. Duvall* (1995) 9 Cal. 4th 464, 474. (emphasis in original).)  Conclusory allegations supported by facts stated with particularity do not warrant habeas corpus relief.  (*Id.*; see also *In re Swain* (1949) 34 Cal. 2d 300, 304.)  In order to establish he is entitled to habeas corpus relief, petitioner must demonstrate that his counsel's performance was deficient, and that the deficient performance prejudiced him. (*Strickland v. Washington* (1984) 466 U.S. 668, 687.)  Where a habeas petitioner alleges that counsel was ineffective in the investigation or presentation of evidence, he must demonstrate how the trial would have been different had the lawyer undertaken further investigation. (See *In re Hardy* (2007) 41 Cal. 4th 977, 1025.)
>
> The bulk of petitioner's fourth claim is entirely conclusory, and fails to show how further investigation could have changed the trial's outcome.  The only specific allegation that might support a claim that counsel's investigation was constitutionally deficient is that counsel "had been told by

14

[petitioner] that he had spent the day with his in-laws. They were not contacted; not by phone nor were they contacted in person." That allegation, though, is not sufficient to establish a prima facie case for habeas corpus relief, because he has not supported the claim with "copies of reasonably available documentary evidence . . . ." (*People v. Duvall, supra*, 9 Cal. 4th at p. 474.) For example, the petition includes nothing which would suggest that petitioner's in-laws were available to testify, and that they would have in fact testified as petitioner alleges. Accordingly, although petitioner's allegations regarding his alibi witnesses are adequately specific, his failure to support them with appropriate documentary evidence precludes granting habeas corpus relief. (Lodg. No. 8 at 2-3.)

## 2. **Applicable Federal Law**

To establish a claim for ineffective assistance of counsel, Jefferson must prove: (1) counsel's performance was deficient in that it fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984).

Notwithstanding this standard, the superior court's rejection of Petitioner's claim rested on the "prima facie" sufficiency of the pleadings. (*Id.*) Specifically, the superior court held that "although petitioner's allegations regarding his alibi witnesses are adequately specific, his failure to support them with appropriate documentary evidence precludes granting habeas corpus relief." (*Id.*) In other words, the superior court found that Petitioner's alibi defense allegations were sufficiently detailed and capable of supporting a *Strickland* claim, but could not be credited absent supporting documentation. On this basis, the superior court summarily dismissed the petition without affording Jefferson, then pro se, an opportunity to amend or supplement the pleadings. In dismissing the petition, the superior court relied upon a line of cases stating that a state habeas petitioner "should . . . attach" copies of reasonably available evidence to the petition. *See, e.g., In re Clark*, 5 Cal. 4th 750, 781 (1993).

The court observes that those cases encourage, but do not require, that petitioners submit corroborating evidence together with their habeas petitions. *See id.* ("The court determines on the basis of the allegations of the original petition . . . as well as the supporting documentary evidence and/or affidavits, which should be attached if available, whether a prima facie case entitling the petitioner to relief if the allegations are proven has been stated.").[3] To impose "a universal requirement of corroboration" would run into "substantial tension with *Strickland*'s discouragement of 'mechanical rules' that distract from an inquiry into the fundamental fairness of the proceedings." *Nunes v. Mueller*, 350 F.3d 1045, 1060 (9th Cir. 2003) (quoting *Strickland*, 466 U.S. at 695). Instead, the general rule is to ask "whether, assuming the petition's factual allegations to be true, the petitioner would be entitled to relief." *People v. Duvall*, 9 Cal.4th 464, 474-75 (1995); *In re Harris*, 5 Cal.4th 813, 21 Cal.Rptr.2d 373, 855 P.2d 391, 397 (1993) ("[O]ne seeking relief on habeas corpus need only file a petition for the writ alleging facts which, if true, would entitle the petitioner to relief."). *See also Phillips v. Woodfor*d, 267 F.3d 966, 973 (9th Cir. 2001) ("[A] petition may be dismissed without a hearing only when it consists solely of conclusory, unsworn statements unsupported by any proof or offer thereof.").

Jefferson's alibi defense allegations were neither conclusory nor unsworn. Notably, the superior court admitted that Jefferson's alibi defense allegations were "adequately specific," and therefore could "support a claim that counsel's investigation was constitutionally deficient." (*Id.*) Petitioner identified the substance of the alibi defense, *i.e.* "that he had spent the day with his in-laws" when the robbery occurred, and declared how "an interview with them would have given [counsel] evidence supporting an alibi defense." (Pet. at 33.) He described how this evidence might have changed the outcome of the proceeding: "By not presenting evidence to controvert the case of the prosecution, the jury was left with no other choice but to convict." (*Id.*) He averred that

---

[3] For this reason, this case differs materially from *Baja v. Ducharme*, where Washington law "required [the petitioner] to come forward with affidavits or other evidence." *Baja v. Ducharme*, 187 F.3d 1075, 1079 (9th Cir. 1999).

his in-laws "were not contacted," despite the fact that counsel was "informed of the details of Petitioner's activities the day of the charged offense." (*Id*.) Nor could it be said that the verified pleadings were "entirely without credibility." *Id*. To the contrary, Jefferson declared under penalty of perjury that the allegations in the petition were true.[4] *See* Cal. Penal Code § 1474 ("The petition must be verified by the oath or affirmation of the party making the application.")

Although the court has serious doubts about the fidelity of the state court's determination, the superior court rejected Petitioner's claim at the pleading stage without granting leave to amend, and other courts summarily affirmed the dismissal. Consequently, there does not exist a complete evidentiary record by which to evaluate the potential merits of Jefferson's claim under *Strickland*. To award habeas relief on Jefferson's *Strickland* claim, the court therefore must also broach the question of whether Jefferson is entitled to an evidentiary hearing under § 2254(e)(2).

At present, the law is unsettled as to the circumstances when a district court may elect to hold an evidentiary hearing before it concludes that the state court erred under AEDPA. *See Cullen v. Pinholster*, 563 U.S. 170, 203 (2011) (declining to decide whether a district court may "choose to hold an evidentiary hearing before it determines that § 2254(d) has been satisfied"). At a minimum, "[b]ecause the deferential standards prescribed by § 2254 control whether to grant habeas relief, a federal court must take into account those standards in deciding whether an evidentiary hearing is appropriate." *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007).

Under the circumstances, the court is inclined to draw the conclusion that review under § 2254 is not "limited to the state-court record when a petitioner's inability to develop the facts supporting his claim was the fault of the state court itself." *Pinholster*, 563 U.S. at 213 n.5 (Sotomayor, J., concurring). For the reasons articulated in this section,

---

[4] The court also observes that Jefferson filed his state habeas petition pro se. Such pleadings are to be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

the court believes that this exception is satisfied here, and that an evidentiary hearing may yield additional evidence relevant to the § 2254 determination.

Out of an abundance of caution, however, the court additionally elects to examine whether AEDPA deference might be warranted on the basis of the state court record alone. Here, Jefferson contends that the state court decision both (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law," § 2254(d)(1), and (2) "was based on an unreasonable determination of the facts," § 2254(d)(2).

The clearly established federal law in this case is *Strickland v. Washington*, 465 U.S. 668 (1984). Jefferson argues that the state court decision was an unreasonable application of *Strickland* under § 2254(d)(1). Although the state court correctly identified *Strickland* as the governing law, it unreasonably applied *Strickland* to the facts of this case, as set forth in the verified complaint.

The verified pleadings state that Jefferson's attorney failed to pursue or investigate an alibi defense, even though his attorney was made aware of the fact that Jefferson "had spent the day [of the robbery] with his in-laws," and "[a]n interview with them would have given him evidence supporting an alibi defense." (Pet. at 33.) Under *Strickland*, counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." 466 U.S. at 691. For this reason, it was constitutionally deficient for trial counsel to decline to interview favorable alibi witnesses when there was no indication that the witnesses were not available, and no other witnesses would have offered the same exculpatory testimony. *See Cannedy v. Adams*, 706 F.3d 1148, 1161–62 (9th Cir. 2013), *amended on denial of reh'g*, 733 F.3d 794 (9th Cir. 2013). Respondents do not contend that the verified allegations are contradicted by the trial record or inherently implausible. Thus, there is a reasonable probability that the verdict would have been different had this exculpatory alibi evidence been introduced. *See supra* n. 6. In light of the verified pleadings, it was objectively unreasonable for the state superior court to conclude that the allegations could not support a claim for ineffective assistance of counsel under *Strickland*.

Similarly, the state superior court erred under § 2254(d)(2) when it made an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding." This evidence consisted of Jefferson's verified pleadings. The superior court did not credit Jefferson's verified pleadings when it concluded that, although "sufficiently specific," the allegations could not be taken as true absent additional documentation. (Lodg. No. 8 at 2-3.) In other words, rather than making reasonable inferences in favor of Jefferson's verified pleadings, the court concluded that they were not credible, meriting a dismissal of the petition. The state superior court's implicit credibility determination is not entitled to deference because it is an unreasonable determination of the facts in light of the verified pleadings. As the Ninth Circuit held in *Nunes*, the state court determination was objectively unreasonable because it "made factual findings (that is, it drew inferences against [the petitioner] where equally valid inferences could have been made in his favor, and it made credibility determinations) when it rather claimed to be determining prima facie sufficiency." *Nunes*, 350 F.3d at 1056; *see also id.* at 1054 ("With the state court having purported to evaluate [his] claim for sufficiency alone, it should not have required [him] to prove his claim without affording him an evidentiary hearing-and it surely should not have required [him] to prove his claim with absolute certainty."). Therefore, viewed under either § 2254(d)(1) or § 2254(d)(2), the state superior court's conclusions with respect to Jefferson's *Strickland* claim are not entitled to AEDPA deference.

### D. An Evidentiary Hearing on Petitioner's Claim of Ineffective Assistance of Trial Counsel Is Appropriate.

Having determined that the state court erred under §§ 2254(d)(1) and (2), the court now examines whether an evidentiary hearing may be proper.[5] Petitioner requests an

---

[5] An evidentiary hearing may be used to introduce factual findings when their absence was "the result of a curtailed proceeding at the state level," *Baja v. Ducharme*, 187 F.3d

evidentiary hearing under § 2254(e) to introduce evidence relevant to his *Strickland* claim. Section 2254(e)(2) provides:

> (2)  If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that –
>
> (A)  the claim relies on –
>
> > (i)  a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> >
> > (ii)  a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B)  the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for the constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

The initial inquiry under § 2254(e)(2) is whether the petitioner has "failed to develop the factual basis of a claim in State court proceedings." 28 U.S.C. § 2254(e)(2). "[A] failure to develop the factual basis of a claim is not established unless there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Williams v. Taylor*, 529 U.S. 420, 432 (2000).

To demonstrate the requisite diligence in developing the factual record, a petitioner must typically seek an evidentiary hearing in state court. Jefferson had no opportunity to request an evidentiary hearing, as the superior court dismissed the petition at the pleading stage without leave to amend. Under these circumstances, the court finds that *Horton v. Mayle*, 408 F.3d 570 (9th Cir. 2005), is instructive. There, the

---

1075, 1078 (9th Cir. 1999*); see also Killian v. Poole*, 282 F.3d 1204, 1208 (9th Cir. 2002); *Weaver v. Thompson*, 197 F.3d 359 (1990).

state court had also dismissed the habeas petition without ordering formal pleadings. The Ninth Circuit observed that a California court "determines whether an evidentiary hearing is warranted only after the parties file formal pleadings, if they are ordered to do so." *Id*. at 585 (*citing People v. Duvall*, 9 Cal.4th 464, 474-75 (1995)); *see Williams v. Taylor*, 529 U.S. 420, 430 (2000); *People v. Romero*, 883 P.2d 388, 391–94 (1994)). "Because Horton never reached the stage of the proceedings at which an evidentiary hearing should be requested, he has not shown 'a lack of diligence at the relevant stages of the state court proceedings.'" *Id*. Similarly here, Jefferson has not "failed to develop" the factual basis of his claim within the meaning of § 2254(e)(2).

When § 2254(e)(2)'s applicability criteria is not met, the court reverts to the pre-AEDPA standard for determining whether an evidentiary hearing is warranted. *Id*. at 583 n. 6 (*citing Williams*, 529 U.S. at 437). Under this standard, a habeas petitioner is entitled to an evidentiary hearing if "(1) he has alleged facts that, if proven, would entitle him to relief, and (2) he did not receive a full and fair evidentiary hearing in state court." *Id.* Here, the court concludes that Jefferson's allegations, if proven, amount to a "colorable claim" of prejudice and would entitle him to habeas relief under *Strickland*. *See Phillips v. Woodford*, 267 F.3d 966, 979 (9th Cir. 2001) (habeas petitioner who "has raised a colorable claim of prejudice [has made] a sufficient showing to entitle him to an evidentiary hearing on his ineffective assistance of counsel claim"); *Babbitt v. Calderon*, 151 F.3d 1170, 1177 (9th Cir. 1998), *as amended* (Aug. 27, 1998) ("[W]here a claim of deficient performance has been made out, it is 'generally likely' that a hearing will be required on the issue of prejudice.").

In his verified petition, Jefferson contends that trial counsel was ineffective for failing to contact any alibi witnesses and investigate his alibi defense. A failure to investigate, as Jefferson alleges, may constitute ineffective assistance of counsel. *See Strickland*, 466 U.S. at 691 ("[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."); *Brown v.*

*Myers*, 137 F.3d 1154, 1156-57 (9th Cir. 1998) (finding deficient performance prong met where counsel failed to contact and interview alibi witnesses).

Moreover, this deficiency could have resulted in a "reasonable probability" that the outcome of the trial would have been different. *Strickland*, 466 U.S. at 694. Jefferson articulated the existence of mitigating evidence in support of his alibi defense. The prosecution's eyewitness identification in this case was not overwhelming.[6] Yet trial counsel did not "present a defense case . . . to controvert the case of the prosecution." (Pet. at 33.) An alibi defense could therefore have led to a "reasonable probability" that the trial verdict would have gone another way. A "reasonable probability" is not a preponderance of the evidence, but a "probability sufficient to undermine confidence in the outcome." *Brown*, 137 F.3d at 1157 (finding that had the alibi witnesses testified, the jury "would have had to balance more evenly divided evidence to reach its verdict" and this was sufficient to "undermine confidence in the verdict"). Under this standard, Jefferson has articulated a colorable claim of relief under *Strickland*. As a result, the court concludes that Jefferson is entitled to an evidentiary hearing, which may render him eligible for habeas relief on his ineffective of assistance of counsel claim.[7]

**IV. CONCLUSION**

For the reasons stated above, Jefferson's § 2254 petition is DENIED in part and GRANTED in part. The court GRANTS Jefferson's request for an evidentiary hearing on

---

[6] At trial, the prosecution presented testimony from the two robbery victims. The first, Ms. Linder, was not able to identify Petitioner from two photographic lineups or at the preliminary hearing. (RT at 298.) Ms. Hyde, the other victim, was not able to identify anyone in a first photographic lineup, but did identify the Petitioner in a second lineup. (*Id*. at 332-33, 437.) Ms. Hyde then identified the wrong person at the preliminary hearing. (CT at 13; RT at 489.) At trial, however, she testified that she was 100 percent sure Petitioner was the robber. (RT at 337.)

[7] Because the court grants Petitioner's request for an evidentiary hearing, it need not decide whether it may consider a newly offered declaration by one of the "in-laws" Petitioner had earlier identified as an alibi witness in his state habeas petition. (Dkt. No. 43-1.)

his *Strickland* claim, and defers a final determination on this claim until after the completion of the evidentiary hearing. The court sets the evidentiary hearing in this matter for Monday, February 12, at 1:00 PM, or at a subsequent date stipulated by the parties.

**IT IS SO ORDERED.**

Dated: January 9, 2018

_____
DEAN D. PREGERSON
UNITED STATES DISTRICT JUDGE